IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JONI LEE ELLISON                                                                    PLAINTIFF


            v.                          CASE NO.        12-2321


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  Procedural Background:

The plaintiff filed an applications for DIB on October 5, 2010, alleging an onset date of October 1, 2010, due to plaintiff's back injury, arthritis, depression, fibromyalgia, and chronic fatigue (T. 137). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on August 19, 2011. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 36 years of age and possessed a GED. The Plaintiff had past relevant work ("PRW") experience as a CNA and Church Secretary (T. 138). On October 4, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's low back pain and reduced range of motion, status post L3-4 laminectomy and obesity did not meet or equal any Appendix 1 listing. T. 12. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to return to her past relevant work as a CNA work. T. 16.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The Plaintiff contends that the ALJ committed error in failing to properly develop the record. (ECF No. 9, p. 6).The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is not supported by substantial evidence.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428,

431 (8th Cir.1983)).  The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The Plaintiff began to be treated by Dr. Barry Katz, a Board Certified Neurosurgeon, in October 2010 at which time Dr. Katz noted that the Plaintiff had only "mild degenerative changes" and he did not recommend surgery but recommended conservative treatment. (T. 229).

The Plaintiff filed for benefits and a Physical RFC assessment was performed, in October 2010, by a non-examining physician, Dr. Whaley, who was of the opinion that the Plaintiff could lift 20 pounds Occasionally, 10 pounds Frequently and she could Stand and/or Walk for about 6 hours in an 8-hour workday, and Sit for less than about 6 hours in an 8 hour workday. (T. 233). Dr. Whaley found no Postural Limitations (T. 234) but notes there was no Medical Source Statement in the records he reviewed. (T. 238). Dr. Whaley's findings were reviewed and affirmed by Dr. Bill Payne in December 2010. (T. 251).

The court has stated that the results of a one-time medical evaluation do not generally constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).

The Plaintiff was referred to Dr. Swicegood for pain management in November 2010. (T. 241).  Dr. Swicegood's initial exam was relatively normal except the Plaintiff did have a positive Straight Leg Test on her left leg. (T. 243). He recommended an ESI (Epidural Spinal Injection)

-4-

which was performed on November 8, 2010 (T. 245) and again on December 6, 2010 (T. 247).

The injections failed to have any long lasting effect and the Plaintiff returned to see Dr. Katz in March 2011.  Dr. Katz had another MRI performed and noted that the MRI did show "diffuse anular disc bulging is demonstrated with mild loss of height and disc desication.  There is biforaminal extension of the bulging with right foraminal anular fissuring.  There is mild biforaminal neuroforaminal narrowing and mile central canal stenosis" at L3-4. (T. 499).  At L4-5 there was "mild loss of disc height and disc desiccation" and "diffuse anular disc bulging with biforaminal extension resulting in mild to moderate bilateral neuroforaminal narrowing" (T. 500). Dr. Katz notes that surgery verses conservative treatment was discussed and the Plaintiff "selected to go ahead with surgery which I think is reasonable". (T. 259).  The surgery was performed by Dr. Katz on March 31, 2011 and his Operative Report reflects that he explained the risk to her which would include, but not limited to inter alia "infection, hemorrhage, spinal fluid leak, worsened neurologic deficits, recurrent stenosis requiring further surgery, lumbar spine instability requiring a fusion procedure". (T. 311).  The report then describes the operative procedure which was performed without significant notation. The Plaintiff was discharged on April 1, 2011. (T. 288).

The Plaintiff was seen back at the NWA Neuroscience Institute on May 13, 2011 (T. 498), June 23, 2011 (T. 494), July 11, 2011 (T. 491), August 10, 2011 (T. 488) still complaining of back pain.  On August 26, 2011 another MRI was performed (T. 503) and the Dr. Armstrong noted that the Plaintiff had "decompressive lamminectomy 2 levels without benefit.  Recurrence and worsening pain.  Would refer back to surgeon performing her procedure to determine fusion necessity."  (T. 502).

-5-

The Plaintiff medical records end with her August 26, 2011 visit and the ALJ's decision was rendered October 4, 2011 without ever seeking a Consultive Examination (*See Gasaway v. Apfel*, 187 F.3d 840, 842 (8th Cir. 1999); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) ("[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citation and internal quotes omitted)) or any clarification from the Plaintiff 's treating physician concerning the success of her operation or asking for any type of RFC from her treating physician.

 If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).  "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010).  *See Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment.").

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994).  In this case the Plaintiff's condition appears to have worsened after her Physical RFC assessment rendered by the non-examining consultive physician.  She underwent a surgical procedure of some magnitude with substantial risk and, it

appears, without benefit.  The court believes that remand is necessary to allow the ALJ to obtain

a Physical RFC assessment from the Plaintiff treating neurosurgeon Dr. Katz or in the alternative

a Consultive Examination and then a reassessment of her Physical.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial

evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter

should be remanded to the Commissioner for further consideration.

Dated  this December 13, 2013.

/s/ J. Marschewski

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE